UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY GILLARD,

                                        Plaintiff,

                                                        9:09-CV-0860
v.                                                      (NAM/GHL)

MICHAEL ROVELLI, et al.,

                                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

GARY GILLARD, 01-A-1613
Plaintiff *pro se*
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ANDREW M. CUOMO                     ROGER W. KINSEY, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Gary Gillard alleges that Defendants subjected him to excessive force, threatened to

tamper with his food and interfered with the delivery of sealed meals, denied him adequate

medical care, and failed to properly respond to his grievances.  Currently pending before the

Court are Defendants' motion to vacate the text order entered March 10, 2010, (Dkt. No. 52),

Plaintiff's objection to that request (Dkt. No. 55), Defendants' motion to dismiss for failure to

state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 42), and Plaintiff's

cross-motion for summary judgment (Dkt. Nos. 72 and 77).  For the reasons that follow, I order

that Defendants' request to vacate the text order be granted, order that Plaintiff's objection to

Defendants' request be denied, recommend that Defendants' motion to dismiss be granted in part

and denied in part, and recommend that Plaintiff's cross-motion for summary judgment be

denied.

## I.    BACKGROUND

In broad terms, Plaintiff's complaint involves four issues: the use of excessive force

against him by inmate Perez and several DOCS employees, the denial of medical care for

ailments he suffered prior to the excessive force incident and injuries he sustained as a result of

the excessive force incident, Defendants' threats to tamper with Plaintiff's food, and the handling

of grievances Plaintiff filed as a result of these issues.

### A.    Excessive Force, Associated Grievances, and Associated Medical Care.

On December 24, 2008, Plaintiff wrote to Defendants David Rock (Superintendent of

Great Meadow Correctional Facility), P. Heath (First Deputy Superintendent), and C.F. Kelly

(Deputy of Security) advising them that there was a conspiracy between Defendant Correction

Officer Michael Rovelli and other correctional officers to arrange a vigilante gang assault on or

murder of Plaintiff.  (Dkt. No. 1 ¶ 36.)  On December 26, 2008, Plaintiff received a letter from a

correctional facility specialist stating that his letter had been forwarded to Defendant David

Rock.  *Id*. ¶ 38.  On January 3, 2009, Plaintiff received a letter from Captain Eastman

2

acknowledging receipt of Plaintiff's complaint.  (Dkt. No. 1 ¶ 40.)

On January 6, 2009, Plaintiff wrote a letter to Defendant Richard Roy of the Inspector General's office describing Defendant Rovelli's continued threats and harassment and expressing fear about what would happen to him when he was released from keeplock on January 10, 2009. *Id.* ¶ 41.  On January 8, 2009, Vernon Fonda of the Inspector General's office informed Plaintiff that his grievance was being forwarded to Defendant David Rock for further action.  *Id.* ¶ 42.

Plaintiff alleges that on February 4, 2009, an inmate "cut the plaintiff in the hearing room on behalf of Michael Rovelli."  (Dkt. No. 1. ¶ 43.)

On February 5, 2009, Defendant Rovelli told Plaintiff that "it's not over yet mother fucker, go tell you rat bitch mother fucker remember it[']s not over."  *Id.*  Later that day, Defendant Rovelli shouted at Plaintiff "go rat[,] Gary you fuck[i]n' rat."  *Id.* ¶ 44.

On February 11, 2009, Defendant Rovelli came to Plaintiff's cell and said "I have the power not you.  I brought you back.  It's not over yet and the next one will be better[,] you piece of shit."  *Id.* ¶ 45.  Thereafter, Defendant Rovelli had Defendant Correction Officer M. Rock assist him in denying food to Plaintiff in order to "keep him weak so he could not defend himself against the setup contract [h]it."  *Id.* ¶ 46.

On April 25, 2009, Plaintiff went to the big recreation yard for the first time in about two months. *Id.* ¶ 47.  Two inmates informed him that Defendant M. Rock had told Defendant Rovelli that Plaintiff was in the yard and that "today was a good day to get him."  *Id.*  As Plaintiff walked around the yard, he noticed Defendant Rovelli glaring at him.  *Id.* ¶ 48.  Defendant Rovelli went to a table where Defendant inmate Eric Perez was sitting.  *Id.*  Shortly thereafter, Defendant Perez attacked Plaintiff without warning.  *Id.*  Plaintiff attempted to defend himself

3

and hoped the officers would stop the attack.  (Dkt. No. 1 ¶ 49.)  Instead, Defendant Rovelli

forced his knee into Plaintiff's head and said "I told you I would get you[.]  You just got beat by a

fagg[o]t[,] you can't fight."  *Id*.  Defendant Rovelli then instructed Defendant Corrections Officer

Frank Flores to take Plaintiff "into beat up Room #1[,] I'll be right there."  *Id*. ¶ 50.

      Once in the room, Plaintiff was placed with his toes and face to the wall. *Id*. ¶ 51.

Defendant Sergeant Nicholas Deluca entered the room and said "Perez should have put [six]

inches of ste[e]l into you, you piece of shit, but we will finish what he started."  *Id*. ¶ 52.  Then

Defendant Rovelli came in, said "you can't fight, you got beat by a fagg[o]t," and slammed

Plaintiff's face into the wall twice.  *Id*. ¶ 53.  Plaintiff's "lights went out" and he "could not see for

a few seconds but heard [Defendant] Rovelli state his face was bleeding as well as the

plaintiff[']s." *Id*.  Plaintiff was then "beaten to the flo[or]" by Defendants Deluca and Flores and

Defendant Correction Officer Shattuck as blood ran nonstop from two cuts around Plaintiff's

right eye.  *Id*. ¶ 54.  Plaintiff tried to "cover up into the wall to stop the blows from reaching [his]

face," but Defendant Rovelli grabbed the hood of Plaintiff's sweat suit and exposed his face so

that Defendant Rovelli and Defendants Deluca, Flores, and Shattuck could hit it.  *Id*. ¶ 55.  This

continued for fifteen or twenty minutes.  *Id*.  Plaintiff's hands were cuffed behind his back the

entire time.  *Id*.  Defendant Sergeant Colin Fraser, Defendant Sergeant Michael Hoy, and

Defendant Correction Officer H. Foster joined in by kicking Plaintiff in the back, head, buttocks,

legs, spine, and shoulders.  *Id*. ¶ 56.

      Defendants Deluca and Shattuck forced Plaintiff onto his feet "due to the large amount of

blood all over the floor and [P]laintiff's clothing" and took him to a different room. *Id*. ¶ 57.

There, Defendant Shattuck pinned Plaintiff against a sink and punched Plaintiff in the ribs and

back while Defendant Deluca hit Plaintiff in the face, eyes, nose, and jaw.  (Dkt. No. 1 ¶ 57.)

Once the blood was cleaned up in the first room, Defendants Deluca and Shattuck returned Plaintiff there and punched him in the face, knocking him to the floor.  *Id*. ¶ 58. Defendants Deluca and Shattuck continued to kick and stomp Plaintiff's legs, ankles, ribs, and chest.  *Id*.  As this was happening, Defendant Fisher Nesmith opened the door and said "[A]re you done yet[?]  If not, take your time."  *Id.* ¶ 59.  Defendant Nesmith then slammed the steel door into Plaintiff's head as he lay "on the floor bloody and broken up."  *Id*.

After the beating was over, Plaintiff was taken to an examination room.  There, Defendant J. Leos "did a vis[ua]l inspection" of Plaintiff and documented some of Plaintiff's injuries.  *Id*. ¶ 60.  Plaintiff alleges that these injuries included broken ribs, broken left hand, and broken eardrum.  *Id*. ¶ 62.  Defendant Leos did not say anything or ask any questions.  *Id*. ¶ 60. He did not give Plaintiff any medical assistance other than to wash the blood off of Plaintiff's face and head.  *Id*.  Defendant Leos entered a false time on his report to "cover up for beating." *Id*.  Defendant Nesmith then attempted to stitch the cuts around Plaintiff's eye, but Plaintiff refused treatment because Defendant Nesmith had participated in the use of excessive force.  *Id*. ¶ 61.

Pictures were taken of Plaintiff's injuries.  *Id*. ¶ 63.  Defendant Foster and Defendant Sergeant Nabozny then escorted Plaintiff to the Special Housing Unit ("SHU").  *Id*.

After the beating, Plaintiff saw Defendant Counselor Brian McAllister.  *Id*. ¶ 65.  Plaintiff asked Defendant McAllister to contact Plaintiff's family and inform them of his injuries.  *Id*. Later, Plaintiff's family contacted the prison and Defendant McAllister refused to give them any information.  *Id*. ¶ 66.

Sometime after the alleged use of excessive force, Plaintiff was taken to the medical unit, where he was seen by Defendant Janet Collins.  (Dkt. No. 1 ¶ 70.)  She informed him that his "left eardrum had a hole in it but it should heal in time" and gave him ibuprofen for pain.  *Id*.  Plaintiff asked for x-rays of his face, neck, back, and left hand and an H.I.V. test due to the "cutting" on February 4, 2009.  *Id*.  Defendant Collins told Plaintiff that the pain "was from getting old" and denied his request for x-rays.  *Id*.

Plaintiff alleges that in order to cover up the use of excessive force, Defendant Lieutenant K.H. Smith, Defendant Lieutenant Peter Besson, and Defendants Kelly, Foster, Flores, Shattuck, Rovelli, Hoy, and Deluca filed false misbehavior reports charging Plaintiff with fighting, violent conduct, refusing a direct order, and assault on staff.  *Id*. ¶ 67.

Plaintiff filed three grievances regarding the use of excessive force and the medical care he received thereafter.  *Id*. ¶ 68.  No one responded.  *Id*.

### B.    Medical Issues Predating the Alleged Use of Excessive Force

On October 20, 2008, Plaintiff filed a grievance because he was denied access to sick call.  (Dkt. No. 1 ¶ 83.)  Plaintiff alleges that his grievance was denied "at all levels of [a]ppeal." *Id.*

On March 26 and 29, 2009, Plaintiff submitted requests to be seen at sick call to receive medication and an AIDS/HIV test due to being cut by an inmate.  *Id*. ¶¶ 84, 85.

On April 8, 2009 Plaintiff filed another grievance.  *Id*. ¶ 86.

On April 10, 2009, Plaintiff was seen by Defendant Silverberg but was told it was a "[five] year physical" rather than an appointment to address Plaintiff's concerns.  *Id*. ¶ 87.  Plaintiff then refused treatment.  *Id*.  Afterward, Plaintiff filed another grievance regarding the

denial of treatment for his medical concerns.  (Dkt. No. 1 ¶ 88.)

On April 14, 2009, Plaintiff was seen by Defendant Lindemann who informed Plaintiff that because he refused the five year physical he would receive no more treatment.  *Id*. ¶ 89.  At Plaintiff's request Defendant Lindemann checked Plaintiff's throat but found nothing.  *Id.* Plaintiff claims he had been "hacking all day every day" for "over [one] year."  *Id.*  Afterward, Plaintiff filed another grievance regarding medical care.  *Id*. ¶ 90.

On April 17, 2009, Plaintiff received a response from the Superintendent's office stating that after a review of Plaintiff's medical records, Plaintiff had received the opportunity to address his concerns and had received "[a]dequate medical care as well as medication."  *Id*. ¶ 93.

Plaintiff alleges that he was called to see Defendant Silverberg on April 24, 2009, but that he was "forced to sit 20 minutes" after the Defendant Nurse Labrum took his vitals by Defendant Silverberg, who "was in a room doing nothing just to make the plaintiff suffer."  (Dkt. No. 1 ¶ 95.)  When Defendant Silverberg "finally" called Plaintiff into the examination room, he said "so, we are going to look at your throat today."  *Id*. ¶ 96.  When Plaintiff asked "what about the ears, headaches, and HIV test," Defendant Silverberg said "only the throat[,] one thing at a time."  *Id*. Plaintiff "objected and stated it's been over 1 year and every time is denied the review of issues and concern[]s of matters that are not getting check out ever."  *Id*.  Defendant Silverberg then looked into Plaintiff's throat and said he did not see anything.  *Id*. ¶ 97.  Plaintiff asked him to get "the stix" and look at the back of his throat.  *Id*.  Without putting on a glove, Defendant Silverberg grabbed a "stix," handled it from "one end to the other" and told Plaintiff to open his mouth.  *Id*.  When Plaintiff objected "to this unhygienic act," Defendant Silverberg "threw the stix to the floor and said do not come [b]ack ever to sick call."  *Id*.

Plaintiff alleges that Defendant David Rock was "continuously . . . informed of the medical needs of the [P]laintiff and the deliberate black balling by [the] medical department, [but] has refused to stop, correct or grant any medical relief and continued to file false response[s] to all matters of concern thus causing the [P]laintiff to live in continued pain day and night without relief." (Dkt. No. 1 ¶ 98.)

### C.      Issues with Plaintiff's Food

After the use of excessive force, Defendant Deluca told Plaintiff that he should not eat prison food because "we control everything[,] even the inmates who make your food." *Id.* ¶ 64. Plaintiff went on a hunger strike because of this threat concerning his food. *Id.* ¶¶ 69, 78, 79. In response, Defendant Heath ordered that Plaintiff receive sealed kosher meals. *Id.* ¶ 69. On May 1, 2009, "the meals w[]ere stopped by someone overriding that order" and Plaintiff went back on hunger strike. *Id.* ¶ 71.

Defendant David Lindemann came to Plaintiff's cell on May 5, 2009, "threatening the plaintiff and demanding the plaintiff come to the gate or he will have the plaintiff [d]ragged to the [h]ospital to be force[] fe[]d." (Dkt. No. 1 ¶ 72.) A few minutes later, four officers and a sergeant ordered Plaintiff out of his cell and force-walked him to the medical unit. *Id.* Plaintiff was "force[d]" to see Defendant Doctor Howard Silverberg, who "has continued to file false information into plaintiff's medical file, refuse to give medical treatment or medication for [i]llness. . . . Silverberg ask[ed] [whether] I [was] going to eat the food I stated no he said Good we get to force feed you, you will not enjoy that I assure you and walked out ordering staff to place me in Isolation Room #2." (Dkt. No. 1 ¶ 73.) Defendant Deluca came into the room. *Id.* ¶ 74. He said he hated Plaintiff and hoped that he would die. *Id.* He also informed Plaintiff that

he "can't wait to start the force feeding as he will be there two times a day to put shit down the plaintiff's throat." (Dkt. No. 1 ¶ 74.) Defendant Heath came to the hospital "seeking to resolve the [h]unger [s]trike [i]ssue and state[d] what[]ever the doctor states will be the outcome if he orders medical meal then you will get it." *Id*. ¶ 75.

On "May 7, 2009, Doctor Carandy came to talk to plaintiff with . . . other officers [and] stated he would give [d]iet meal sealed exrays (sic) and medication for pain . . . Carandy stated if we don[']t give him the meal it will only start the hunger strike all over again." (Dkt. No. 1 ¶ 76.)

On May 8, 2009, Defendant Nurse Terry "in retaliation stated the plaintiff refused [x-rays] and threatened him he would be out of there that day." *Id*. ¶ 77. Plaintiff was ultimately given sealed diet meals three times a day but was "forced to eat it with a tube of toothpaste due to officers refusing to give a spoon in [r]etaliation." *Id*. ¶ 78.

On May 11, 2009, Plaintiff was returned to the SHU. *Id*. ¶ 79. Once Plaintiff was returned to the SHU, Defendant Deluca and Defendant Terry stopped deliveries of Plaintiff's special meals. *Id*. ¶ 76. Plaintiff "lived on water[,] milk[,] sugar and sealed [i]tems that came with different meals starving in fear of being poisoned." *Id*.

## II.   DEFENDANTS' MOTION TO VACATE THE COURT'S MARCH 10, 2010, ORDER

On February 5, 2010, Plaintiff requested the entry of default against Defendants Shattuck, Poirier, Fischer, Nesmith, Lindemann, Labrum, Kelly, Flores, and Aubin. (Dkt. No. 47.) On March 10, 2010, I granted Plaintiff's request in part and denied it in part. (Text Order of Mar. 10, 2010.) Noting that Defendants Kelly, Nesmith, Lindemann, Fischer, and Labrum are explicitly mentioned in Defendants' memorandum of law regarding motion to dismiss, I denied the request

9

as to those Defendants.  *Id*.  However, I granted the request as to Defendants Flores, Shattuck,

Aubin, and Poirier because they had not answered the complaint and were not mentioned in

Defendants' notice of motion to dismiss (Dkt. No. 42), the proof of service of the motion to

dismiss (Dkt. No. 42), or anywhere in Defendants' memorandum of law filed in support of the

motion to dismiss (Dkt. No. 42-1).  (Text Order of Mar. 10, 2010.)  It was therefore "unclear

whether [they] are included in the motion to dismiss."  *Id*.

On March 12, 2010, Defendants filed a request to set aside the default.  (Dkt. No. 52.)  In

that letter, defense counsel stated:

> I had thought that by specifically indicating that the motion was being
> made on their behalf by expressly stating as much with the Court's
> electronic filing system, that it would be clear the motion was being
> made on behalf of all the persons I so designated . . . I verily believed
> that by using the Court-supplied filing system and expressly
> indicating therein that I was filing the motion on behalf of all these 28
> clients . . . that those contemplating the motion would realize that the
> motion to dismiss was being made on behalf of all 28 of the
> individuals indicated.  I did not realize that by expressly indicating
> that the motion was being filed on their behalf with the electric filing
> system that there could be confusion as to on whose behalf I was
> making the application.

*Id*. at 1.

The twenty-eight names that counsel listed in the entry on the Court's electronic filing

system included two defendants (M. Rock[1] and Brian Fischer[2]) who have never been served.  The

list also included one Defendant (David Rock) for whom the Court did not receive an

acknowledgment of service form until six weeks after the motion to dismiss was filed.  (Dkt. No.

58.)  Moreover, the list did not include one Defendant (Terry), who has not been served[3] but

about whom defense counsel asserted arguments in the memorandum of law.  (Dkt. No. 42-1 at

11.)  Thus, the list that defense counsel cites as being "clear" was inaccurate and, thus, unreliable.

     In light of this ambiguity, before granting the request for entry of default, the Court

thoroughly reviewed Defendants' memorandum of law and found no mention of Defendants

Flores, Shattuck, Aubin, or Poirier.  The Court found this omission particularly striking in the

case of Defendants Aubin and Poirier, who easily could have been included (as discussed more

fully below) in the section of the memorandum of law discussing lack of personal involvement.

---

[1]    When Plaintiff completed USM-285 forms for service of the complaint, he indicated that Defendant M. Rock's true name is Todd Martineau.  (Dkt. No. 11.)  The Clerk advised Plaintiff that he would need to amend his complaint to substitute Todd Martineau's name before he could be served with the complaint.  *Id.*  To date, Plaintiff has not amended his complaint to name "Todd Martineau" or filed any forms requesting service on "M. Rock."  Therefore, Defendant "M. Rock" has not been served and has not appeared in the action.

[2]    The summons for Defendant Fischer was returned unexecuted, accompanied by a note from the United States Marshal for the Northern District of New York indicating that Defendant Fischer had not returned the Acknowledgment of Receipt of Summons and Complaint by Mail form within thirty days of the initial mailing of the summons.  (Dkt. No. 62.)  The note instructed Plaintiff to submit a new summons and complaint form to serve Defendant Fischer and warned that failure to do so could result in dismissal of the complaint against Defendant Fischer.  *Id*.

[3]    The summons for Defendant Terry was returned unexecuted, accompanied by a note from the Inmate Records Coordinator stating that she was unable to identify Nurse Terry and would need more information.  (Dkt. No. 29.)  On February 3, 2010, the Clerk forwarded a copy of the note to Plaintiff and asked him to provide any additional information about the defendant to the Court.  (Dkt. No. 46.)

Further, it appeared to the Court that Defendants' motion, despite not being labeled as such, was only a partial motion to dismiss because it did not assert any reasons for dismissing Plaintiff's excessive force claims.  Thus, it was reasonable to conclude that perhaps the motion had not been filed on behalf of every Defendant.  Based on this ambiguity, and the apparent confusion it caused Plaintiff (a *pro se* civil rights litigant, to whom I must grant special solicitude), entry of default was appropriate as of March 10, 2010.

However, I now grant Defendants' motion to set aside the default.  Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause . . ."[4]  It is well-settled in the Second Circuit that defaults are not favored, and that there is a strong preference for resolving disputes on their merits.  *See Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995)*; Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983).  In light of Defendants' clarification of their ambiguous motion, I find that they have established good cause to set aside the default, and I therefore order the Clerk to vacate the text order of March 10, 2010, and the entry of default (Dkt. No. 51).

## III.   DEFENDANTS' MOTION TO DISMISS

### A.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*,

---

[4]  Rule 60(b) provides, *inter alia*, that in the case of "mistake, inadvertence, surprise or excusable neglect," a court may relieve a party from a final judgment, order or proceeding. Fed. R. Civ. P. 60(b).

"a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### B.    Medical Care

Plaintiff alleges that Defendants Silverberg, Nesmith, Lindemann, Labrum, Leos, and Collins violated his Eighth Amendment rights by failing to provide him with adequate medical

13

care.[5]  (Dkt. No. 1 ¶¶ 60, 61, 68, 70, 72-73, 76-77, 87- 89, 94-98.)  Plaintiff's claims against

Defendants Leos, Nesmith, and Collins relate to medical care for injuries sustained as a result of

the alleged use of excessive force.  Plaintiff's claims against Defendants Silverberg, Lindemann,

and Labrum relate to medical care prior to the incident.  Defendants argue that Plaintiff has failed

to state an Eighth Amendment claim.[6]  (Dkt. No. 42-1 at 5-11.)

The Eighth Amendment imposes on jail officials the duty to "provide humane conditions

of confinement" for prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this

duty, prison officials must ensure, among other things, that inmates receive adequate medical

care.  *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  There

are two elements to a prisoner's claim that prison officials violated his Eighth Amendment right

to receive medical care: "the plaintiff must show that she or he had a serious medical condition

and that it was met with deliberate indifference."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir.

2009) (citation and punctuation omitted).  "The objective 'medical need' element measures the

---

[5]     Defendants' motion to dismiss does not explicitly address the Eighth Amendment medical claims against Defendants Labrum or Nesmith.

[6]     Defendants assert that the complaint also alleges that Defendants McAllister, Deluca, Heath, and Holland violated Plaintiff's Eighth Amendment right to adequate medical care.  (Dkt. No. 42-1 at 11.)  The complaint does not appear to allege that Defendant McAllister was involved in Plaintiff's medical care.  Rather, it alleges that Defendant McAllister was a corrections counselor (Dkt. No. 1 ¶ 31) who failed to inform Plaintiff's family about his injuries.  (Dkt. No. 1 ¶¶ 65-66.)  The complaint does not appear to allege that Defendant Deluca was involved in Plaintiff's medical care.  Although allegations about him appear in a section of the complaint titled "Statement of Facts, Misuse of Force, Denial of Medical Care," those allegations involve excessive force, threats, false misbehavior reports, and issues with Plaintiff's food.  (Dkt. No. 1 ¶¶ 52, 54-55, 57-58, 64, 67, 69, 74, 76.)  The complaint does not appear to allege that Defendant Heath was involved in Plaintiff's medical care.  Rather it alleges that he was informed about Defendant Rovelli's threats against Plaintiff and was involved in issues regarding Plaintiff's food.  (Dkt. No. 1 ¶¶ 36, 39, 69, 75.)  Regarding Defendant Holland, the complaint alleges only that he failed to investigate the "setup, [b]eating[,] and complaints."  (Dkt. No. 1 ¶ 80.)

severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). Defendants argue that Plaintiff has not stated a claim as to either element. (Dkt. No. 42-1 at 10-11.) I will address Plaintiff's pre-excessive force claims and post-excessive force claims separately.

   1. <u>Medical Care for Injuries Sustained in Alleged Excessive Force Incident</u>

  Plaintiff alleges that Defendants Leos, Nesmith, and Collins were deliberately indifferent to the following injuries that Plaintiff sustained in the alleged excessive force incident: (1) a loss of consciousness that lasted for a few seconds; (2) two cuts around his right eye, which bled profusely; (3) broken ribs; (4) broken hand; and (5) broken ear drum. (Dkt. No. 1 ¶¶ 53, 54, 62, 70.)

  Defendants argue that the complaint fails to satisfy the objective prong of the Eighth Amendment inquiry because Plaintiff "fails to articulate a serious medical need." (Dkt.No. 42-1 at 10.) A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (citations omitted), *accord, Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Defendants address only Plaintiff's allegation that he suffered two cuts around his eye, arguing without citation to authority that the allegation does not "present or describe a serious medical need."  (Dkt. No. 42-1 at 10.)  I find that the complaint alleges facts plausibly suggesting that Plaintiff suffered injuries that could "produce death, degeneration, or extreme pain" as a result of the alleged use of excessive force.  *See Jackson v. Johnson*, 118 F. Supp. 2d 278, 291 (N.D.N.Y. 2000) (loss of consciousness is a serious medical condition); *Ellis v. Guarino*, No. 03 Civ. 6562, 2004 U.S. Dist. LEXIS 16748, at*33-34, 2004 WL 1879834, at *11 (S.D.N.Y. Aug. 24, 2004) ("When Plaintiff arrived at the SHU followed the alleged attacks . . . he allegedly had swelling on his face, contusions in both ears and on his forehead, abrasions on his shoulder, a one millimeter laceration in his right eye, and suffered from blurred vision, headaches, dizziness and ringing in his ears, the latter two of which continued for several days thereafter. . . . Such injuries clearly constitute a serious medical condition for Eighth Amendment purposes."); *Griffin v. Donelli*, No. 05-CV-1072 (TJM/DRH), 2010 U.S. Dist. LEXIS 125271, at *22, 2010 WL 681394, at *8 (N.D.N.Y. Feb. 24, 2010) (*citing Torres v. New York City Dep't of Corrs.*, No. 93-CV-6296 (MBM), 1995 U.S. Dist. LEXIS 1698, at *4, 1995 WL 63159, at *1 (S.D.N.Y. Feb. 15, 1995)) (stating that a broken rib "could present a serious medical need" if treatment was not properly administered); *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998) (broken hand is a serious medical condition); *Odom v. Kerns*, No. 99-CV-10668, 2008 U.S. Dist. LEXIS 47336, at *27-28, 2008 WL 2463890, at * 8 (S.D.N.Y. June 18, 2008) (ruptured eardrum is a serious medical condition).

Defendants argue that Plaintiff's complaint does not state a claim as to the subjective Eighth Amendment prong because the "shear number of examinations, discussions and attempts

16

to aid [P]laintiff forecloses any allegation of indifference, deliberate or otherwise . . . ."  (Dkt. No. 42-1 at 11.)

Medical mistreatment rises to the level of deliberate indifference where it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. at 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Moreover, a complaint that "a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id*. at 106.  Stated another way, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

I find that Plaintiff has alleged facts plausibly suggesting that Defendant Leos was deliberately indifferent to his serious medical needs.  Plaintiff alleges that "[a]fter the beating was over the plaintiff was . . . taken to [an] exam room where J. Leos did a visual inspection of the

plaintiff[']s body documenting some of the injur[ie]s not saying anything of asking any questions and gave no medical assistance other than wash the blood off the face and head of the plaintiff." (Dkt. No. 1 ¶ 60.)  Plaintiff alleges that Defendant Leos entered a false time on his medical note in order to cover up the beating.  *Id.*  Accepting Plaintiff's allegations that his ribs, hand, and eardrum were broken as a result of the alleged excessive force incident as true, as I must for the purposes of this motion, the complaint plausibly suggests that Defendant Leos was aware of facts from which he could have drawn the inference that Plaintiff had a serious medical need, actually drew that inference, and ignored that medical need.  Therefore, I recommend that the Court deny Defendants' motion to dismiss the Eighth Amendment medical claim against Defendant Leos.

Plaintiff has not stated an Eighth Amendment medical claim against Defendant Nesmith or Defendant Collins.  Plaintiff admits that he refused treatment when Defendant Nesmith attempted to stitch the cuts around Plaintiff's eye.  (Dkt. No. 1 ¶ 61.)  Given Plaintiff's allegations about Defendant Nesmith's earlier conduct, Plaintiff's refusal is understandable.  However,  it negates his allegation that Defendant Nesmith was deliberately indifferent to his serious medical needs.  *See Rivera v. Goord*, 253 F. Supp. 2d 735, 756 (S.D.N.Y. 2003).  Plaintiff's allegations regarding Defendant Collins amount to mere disagreement regarding proper treatment, which is insufficient to establish deliberate indifference.  *Estelle*, 429 U.S. at 107 ("[T]he question of whether an X-ray - or additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice . . . .").  Therefore, I recommend that the Court grant Defendants' motion to dismiss the Eighth Amendment medical claim against Collins and that the Court *sua sponte* dismiss the

Eighth Amendment medical care claim against Defendant Nesmith.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted). Because Plaintiff has admitted that he refused care from Defendant Nesmith, I recommend that the Court dismiss the Eighth Amendment medical claim against Defendant Nesmith without leave to amend. However, I recommend that the medical claim against Defendant Collins be dismissed without prejudice.

2.   <u>Medical Care For Conditions That Pre-Dated the Alleged Use of<br>Excessive Force</u>

Plaintiff alleges that Defendants Silverberg, Lindemann, and Labrum were deliberately indifferent to medical conditions that predated the alleged use of excessive force. (Dkt. No. 1 ¶¶ 70, 87, 89, 95-97.) Those conditions were: (1) a need for H.I.V. testing "due to cutting on February 4, 2009"; (2) a need for asthma medication; (3) a "cough in throat due to bum[p]s growing in throat area" that lasted over a year; (4) a rash on his face; (5) a need for nose spray; (6) elbow pain that lasted for five years; (7) lower back and spine pain; (8) left ankle pain; and (9) a need for glasses. (Dkt. No. 1 ¶¶ 84-85, 89, 92.)

Defendants argue that these claims should be dismissed because Plaintiff has not sufficiently alleged any serious medical need or deliberate indifference. (Dkt. No. 42-1 at 5-11.)

19

Defendants are correct.  Plaintiff has not alleged facts plausibly suggesting that any of these conditions were injuries that a reasonable doctor or patient would find important and worthy of comment or treatment, that they affected his daily activities, or that they caused chronic and substantial pain.  *Chance*, 143 F.3d at 702-03; *Sledge v. Kooi*, 564 F.3d 105, 107, 108 (2d Cir. 2009) (asthma not a serious medical condition); *Lewal v. Wiley*, 29 Fed. App'x 26, 29 (2d Cir. 2002) (persistent rash is not a serious medical condition); *Veloz v. New York*, 35 F. Supp. 2d 305, 309, 312 (S.D.N.Y.1999) (prisoner's foot problem, which involved arthritis and pain, did not constitute a serious medical need)*; Veloz v. New York*, 339 F. Supp. 2d 505, 522-26 (S.D.N.Y.2004) (plaintiff's chronic back pain and mild to moderate degenerative arthritis of spinal vertebrae did not establish a serious medical need); *but see Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y.2006) (allegations of "severe pain ... [and] reduced mobility ..." in the shoulder are sufficient to raise a material issue of fact as to a serious medical need).

Even if Plaintiff had alleged facts plausibly suggesting the existence of a severe medical condition, I would recommend dismissing the claims against Defendants Lindemann, Labrum, and Silverberg because Plaintiff has not sufficiently alleged deliberate indifference.  Plaintiff alleges merely that at his request, Defendant Lindemann checked his throat and found nothing. Although he told Plaintiff that Plaintiff could not receive further treatment, Plaintiff did in fact see a doctor again only ten days later.  Regarding Defendant Labrum, Plaintiff alleges only that she took his vital signs and had him wait twenty minutes to see Defendant Silverberg.  Although Plaintiff alleges that Defendant Silverberg behaved somewhat unprofessionally, these allegations as currently pleaded do not rise to the level of deliberate indifference.  Therefore, I recommend that the Court dismiss the Eighth Amendment medical claims against Defendants Lindemann,

Labrum, and Silverberg without prejudice.

### C.   Personal Involvement

Defendants argue that the complaint does not plausibly allege that Defendants Fischer[7],
Roy, David Rock, Heath, Nabozny, or Kelly[8] were personally involved in any alleged
constitutional violation.  (Dkt. No. 42-1 at 12-14.)  With the exception of Defendant Kelly,
Defendants are correct.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a
prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.
1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to
prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show
some tangible connection between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790
F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere "linkage" to the
unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat
superior*) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk
County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.
2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).  In other
words, supervisory officials may not be held liable merely because they held a position of

---

[7]     As noted above, according to the Court's records Defendant Fischer has not been
served in this action.  (Dkt. No. 62.)

[8]     Defendants also argue that "Plaintiff has merely alleged *respondeat superior*
liability" against Defendant Collins and that Plaintiff "names Defendant Labrum but makes no
further allegation."  (Dkt. No. 42-1 at 12-13.)  This is inaccurate.  As discussed above, Plaintiff
claims that each of these Defendants violated his Eighth Amendment right to adequate medical
care.

authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[9]

The complaint does not include any allegations about Defendants Fischer, Aubin, or Poirier.[10] Therefore, I recommend that the claims against these Defendants be dismissed for lack of personal involvement.

Regarding Defendants Roy and Heath, the complaint alleges only that they failed to respond to Plaintiff's letters and grievances. (Dkt. No. 1 ¶¶ 36, 39, 41, 69, 75.) A prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference ... by failing to act on information indicating that the violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). *See also*

---

[9] The Supreme Court's decision in *Ashcroft v. Iqbal*, __ U.S. ___, 129 S. Ct. 1937 (2009) arguably casts in doubt the continued viability of some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009). Here, the Court will assume *arguendo* that all of the *Colon* categories apply.

[10] As discussed above, Defendants did not explicitly argue that the action against Defendants Aubin and Poirier should be dismissed. Moreoever, although Defendants argue that Defendant Fischer was not personally involved, Defendant Fischer has not yet been served in this action. (Dkt. No. 62.) I recommend that the Court dismiss these Defendants *sua sponte* without prejudice.

*Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").  Similarly, "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (quoting *Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 U.S. Dist. LEXIS 5144, at *11, 1995 WL 232736, at * 4 (S.D.N.Y. Apr. 19, 1995)).  Therefore, I recommend the claims against Defendants Roy and Heath be dismissed for lack of personal involvement.

The complaint alleges that Defendant David Rock ignored several grievances (Dkt. No. 1 ¶¶ 36, 39) and that his response to a grievance regarding medical care pre-dating the excessive force incident was unsatisfactory (Dkt. No. 1 ¶ 93).  As discussed in the previous paragraph, the allegation that Defendant David Rock failed to respond to grievances is insufficient to plausibly suggest that he was personally involved in any constitutional violation.  As discussed above in Section III(B)(2), Plaintiff has not stated an Eighth Amendment claim regarding medical care pre-dating the excessive force incident.  Thus, Defendant David Rock was not made aware of an Eighth Amendment medical violation and was not personally involved with any constitutional violation.  Therefore, I recommend that the Court dismiss the claims against Defendant David Rock without prejudice.

Regarding Defendant Nabozny, the complaint alleges, in full, that "Pictures were taken of the plaintiff's injuries with 2 different cameras as the visual inspection and pictures being take[n] w[]ere all on video the the (sic) video escorted the plaintiff to . . .Special Housing Unit by Defendant Foster and Defendant Nabozny."  (Dkt. No. 1 ¶ 63) (syntax in original).  This is

insufficient to allege Defendant Nabozny's personal involvement in any constitutional violation and I therefore recommend that Defendants' motion to dismiss the claim against Defendant Nabozny be granted.          Defendants argue that "Plaintiff has merely alleged *respondeat superior* liability" against Defendant Kelly.  (Dkt. No. 42-1 at 13.)  This is not accurate.  The complaint alleges that Defendant Kelly participated in writing false misbehavior reports to cover up the excessive force incident.  (Dkt. No. 1 ¶ 67.)  This allegation is potentially sufficient to state a claim against Defendant Kelly for retaliation.  *See Snyder v. McGinnis*, No. 03-CV-0909, 2004 U.S. Dist. LEXIS 17976, at *24-26, 2004 WL 1949472, at *8 (W.D.N.Y. Aug. 31, 2004). Therefore, I recommend that the Court deny Defendants' motion to dismiss the claim against Defendant Kelly for lack of personal involvement.

### D.      Claim Against Defendant McAllister

Plaintiff alleges that Defendant McAllister violated his legal rights by failing to communicate with his family regarding his injuries.  (Dkt. No. 1 ¶¶ 65-66.)  Defendants move to dismiss this claim, arguing that "[v]iolations of state law or regulations in themselves do not state a viable section 1983 claim."  (Dkt. No. 42-1 at 14.)  Neither Plaintiff nor Defendants have identified what policy Defendant McAllister's actions may have violated.  In any case, I find that the complaint does not plausibly suggest that Defendant McAllister violated any constitutional right and therefore recommend that the Court grant Defendants' motion to dismiss the claim.

### E.      Threats

Plaintiff alleges that, at various times, Defendants Rovelli, Deluca, Lindemann, and Silverberg threatened him.  (Dkt. No. 1 ¶¶ 43-45, 64, 72-74.)  Defendants argue that Plaintiff's allegations that Defendants Deluca, Lindemann, and Silverberg threatened him do not state a

24

constitutional claim.[11]  (Dkt. No. 42-1 at 14-16.)  Defendants' motion does not address the

allegations that Defendant Rovelli threatened Plaintiff.

      "It is well established that mere threatening language and gestures of a custodial officer

do not ... amount to constitutional violations."  *Alnutt v. Cleary*, 913 F. Supp. 160, 165

(W.D.N.Y. 1996)(punctuation omitted). Therefore, to the extent that Plaintiff alleges that

Defendants Rovelli, Deluca, Lindemann, and Silverberg violated his constitutional rights simply

by threatening him, I recommend that the Court dismiss those claims with prejudice.

**F.**    **Claim Against Defendant Holland**

      The complaint alleges that Defendant Holland[12] was "allegedly investigating the setup,

[b]eating and complaints which was not the fact at all."  (Dkt. No. 1 ¶ 80.)  Prisoners do not have

a due process right to a thorough investigation of grievances.  *Torres v. Mazzuca*, 246 F. Supp.

2d 334, 341-42 (S.D.N.Y. 2003).

> The First Amendment protects a prisoner's right to meaningful access
> to the courts and to petition the government for the redress of
> grievances.  *See Bill Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731,
> 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).  However, inmate
> grievance programs created by state law are not required by the
> Constitution and consequently allegations that prison officials
> violated those procedures do[] not give rise to a cognizable § 1983
> claim.  *Cancel v. Goord*, No. 00 Civ.2042, 2001 WL 303713, *3

---

[11]    Defendants also characterize the allegations in Paragraph 75 of the complaint
regarding Defendant Heath's statement that "what ever the doctor states will be the outcome if he
orders medical meal you will get it" as an allegation that Defendant Heath threatened Plaintiff.
(Dkt. No. 42-1 at 15.)  It does not appear to the undersigned that Plaintiff alleges that Defendant
Heath threatened him.  However, to the extent that the complaint can be read to assert such a
claim, I recommend that it be dismissed with prejudice.

[12]    Defendant Holland is listed in the complaint as "Hollin."  Defendants note that
"Holland" is the correct spelling.  (Dkt. No. 42-1 at 13 n.2.)

> (S.D.N.Y. Mar. 29, 2001).  If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim.  *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).  "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983."  *Cancel*, 2001 WL 303713, at *3; *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y.2003); *Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 390 (W.D.N.Y. 1998).

*Shell v. Brzezniak,* 365 F. Supp. 2d 362, 369 -370 (W.D.N.Y. 2005).  Therefore, I recommend that the Court dismiss the claim against Defendant Holland.

### G.    Eleventh Amendment

Plaintiff sues Defendants "in [their] individual and official capacities." (Dkt. No. 1 at 1-3.)  Defendants move to dismiss the official-capacity claims, arguing that any claims for damages against them in their official capacities are barred by the Eleventh Amendment.   (Dkt. No. 42-1 at 16-17.)  Defendants are correct.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47

26

(1993); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-06.

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.[13]  All DOCS employees are state officials for the purposes of the Eleventh Amendment.  *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. New York State Corr. Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000)("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services.").  Therefore, I recommend that the Court dismiss the claims for damages against Defendants in their official capacities.

## H.    Conspiracy

Plaintiff alleges that Defendants Rovelli, M. Rock, Perez, Flores, and Deluca conspired to use excessive force against him.  (Dkt. No.1 ¶¶ 36, 41, 43-46, 48, 50, 52.)  Defendants move to dismiss Plaintiff's conspiracy claims, arguing that they are barred by the intracorporate

---

[13]      *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . .  As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is *not* a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) (citing cases).

conspiracy doctrine.  (Dkt. No. 42-1 at 19-20.)  Defendants are correct.

The intracorporate conspiracy doctrine states that employees of a single corporate entity are legally incapable of conspiring together.  *Bond v. Board of Educ. of City of New York*, 97-cv-1337, 1999 U.S. Dist. LEXIS 3164, at *5, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999). "This doctrine applies to public entities and their employees."  *Lee v. City of Syracuse*, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009) (citations omitted).  There is an exception to the doctrine where "individuals pursue personal interests wholly separate and apart from the entity."  *Orafan v. Goord*, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006) (citation and quotation marks omitted), *vacated and remanded on other grounds*, *Orafan v. Rashid*, No. 06-2951, 249 Fed. App'x 217 (2d Cir. Sept. 28, 2007).   "[P]ersonal bias does not constitute personal interest and is not sufficient to defeat the intracorporate conspiracy doctrine."  *Everson v. New York City Transit Auth.*, 216 F. Supp.2d 71, 76 (E.D.N.Y. 2002) (quoting *Bond*, 1999 WL 151702, at *2). However, in an unrelated action, I have found that a triable issue of fact exists regarding whether officers acted pursuant to their personal interests where a prisoner alleges that officers assaulted him in retaliation for participating in a federal lawsuit.  *Medina v. Hunt*, No. 9:05-CV-1460, 2008 U.S. Dist. LEXIS 74205, 2008 WL 4426748 (N.D.N.Y. Sept. 25, 2008).  Other courts have found that the personal interest exception applies, and thus allowed conspiracy claims to proceed, where it was alleged that officers conspired to cover up their use of excessive force.  *Hill v. City of New York*, No.03 CV 1283, 2005 U.S. Dist. LEXIS 38926, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005).

Here, Plaintiff has not alleged what motivated Defendants to conspire against him.  "[A] complaint that does not set forth factual allegations showing that any of the individual defendants

acted with independent motives is subject to dismissal for failure to state a claim." *Freeman v. Santos*, No. 9:09-CV-0414, 2010 U.S. Dist. LEXIS 23742, at *8, 2010 WL 982893, at *3 (N.D.N.Y. Mar. 15, 2010) (quoting *Perrin v. Canandaigua City Sch. Dist.*, No. 09-CV-6153, 2008 U.S. Dist. LEXIS 95280, 2008 WL 5054241, at *2 (W.D.N.Y. Nov. 21, 2008)).[14]

Therefore, I recommend that the Court dismiss Plaintiff's conspiracy claims without prejudice.

### I.        Pendent State Claims

Defendants argue that Plaintiff's state law claims should be dismissed pursuant to Section 24 of New York's Correction Law.  (Dkt. No. 42-1 at 21-22.)  Defendants are correct.  That section provides as follows:

> 1.        No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2.        Any claim for damages arising out of any act done or the failure to perform any act   within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24 (1) - (2).  Effectively, this statute precludes inmates from bringing civil suits against "corrections officers in their personal capacities" in New York state courts. *Cepeda v. Coughlin,* 128 A.D.2d 995, 997 (N.Y. App. Div. 3d Dept. 1987).  This bar also applies to pendent state law claims in federal court because "[i]n applying pendent jurisdiction, federal

---

[14]        The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

courts are bound to apply state substantive law to the state claim." *Baker v. Coughlin,* 77 F.3d 12, 15 (2d Cir. 1996) (citations omitted). "If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court." *Baker,* 77 F.3d at 15.

In 2009, the United States Supreme Court held that section 24 is unconstitutional to the extent that it precludes inmates from pursuing §1983 claims. *Haywood v. Drown*, __ U.S. __, 129 S. Ct. 2108 (2009). However, at least two judges in this District have observed that because *Haywood*'s focus is on civil rights claims, the decision "does not affect the question of whether this Court has proper jurisdiction to hear [a] pendent state law claim." *Crump v. Ekpe,* No. 9:07-CV-1331, 2010 U.S. Dist. LEXIS 10799, at *61, 2010 WL 502762, at * 18 (N.D.N.Y. Feb. 8, 2010) (Kahn, J. and Peebles, M.J.); *May v. Donneli,* No. 9:06-CV-437, 2009 U.S. Dist. LEXIS 85495, at *13, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) (Sharpe, J. and Treece, M.J.).[15] Therefore, I recommend that the Court dismiss Plaintiff's pendent state law claims.

### J.    Claims Not Addressed by Defendants

Defendants' motion to dismiss does not address Plaintiff's excessive force claims, retaliation claims, or Eighth Amendment conditions of confinement claims regarding the provision of food. I find that those claims are sufficient to survive *sua sponte* review and therefore recommend that Defendants be directed to answer those claims.

---

[15]    The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

## IV.     PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In his opposition to Defendants' motion to dismiss, Plaintiff purports to move for summary judgment against both the State Defendants and Defendant inmate Perez.  (Dkt. Nos. 72 and 77.)  As the state Defendants note (Dkt. No. 75), Plaintiff's "motion" is not accompanied by a notice of motion, a statement of material facts, or a memorandum of law.  In addition, Plaintiff did not serve the exhibits to his "motion" on Defendants.  Therefore, I recommend that Plaintiff's motion for summary judgment (Dkt. Nos. 72 and 77) be denied.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' request (Dkt. No. 52) to vacate the text order of March 10, 2010, is **GRANTED**.  The Clerk is directed to vacate the text order and the entry of default (Dkt. No. 51); and it is further

**ORDERED** that Plaintiff's objection (Dkt. No. 55) to Defendants' request is **DENIED**; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Freeman v. Santos*, No. 9:09-CV-0414, 2010 U.S. Dist. LEXIS 23742, 2010 WL 982893, at *3 (N.D.N.Y. Mar. 15, 2010); *Crump v. Ekpe,* No. 9:07-CV-1331, 2010 U.S. Dist. LEXIS 10799, at *61, 2010 WL 502762, at * 18 (N.D.N.Y. Feb. 8, 2010); and *May v. Donneli*, No. 9:06-CV-437, 2009 U.S. Dist. LEXIS 85495, at *13, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009); and it is further

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 42) be **<u>GRANTED IN PART AND DENIED IN PART</u>**.  I recommend that the following claims be dismissed with prejudice: (1) the Eighth Amendment medical claim against Defendant

31

Nesmith; (2) the claim against Defendant McAllister; (3) any claim that Defendants Rovelli, Deluca, Lindemann, and Silverberg violated Plaintiff's constitutional rights simply by threatening him; (4) the claim against Defendant Holland; (5) any claims for damages against Defendants in their official capacities; and (6) the pendent state law claims.  I recommend that the following claims be dismissed without prejudice: (1) the Eighth Amendment medical claims against Defendants Collins, Lindemann, Labrum, and Silverberg; (2) the claims against Defendants Fischer, Roy, David Rock, Heath, and Nabozny; and (3) the conspiracy claims.  I recommend that Defendants be directed to answer the Eighth Amendment medical care claim against Defendant Leos;  and it is further

   **RECOMMENDED** that Defendants be directed to answer the following claims not addressed by their motion to dismiss: (1) the retaliation claims against Defendants Smith, Besson, Kelly, Foster, Flores, Shattuck, Rovelli, Hoy, and Deluca; (2) the excessive force claim against Defendants Rovelli, Deluca, Flores, Shattuck, Fraser, Hoy, Foster, and Nesmith; and (3) the Eighth Amendment conditions of confinement claims regarding issues with Plaintiff's food; and it is further

   **RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. Nos. 72 and 77) be **DENIED**.

   Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: September 29, 2010
       Syracuse, New York

George H. Lowe
United States Magistrate Judge