UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY GILLARD,

                          Plaintiff,

v.                                                     9:09-CV-0860
                                                      (NAM/GHL)

MICHAEL ROVELLI, et al.,

                          Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

GARY GILLARD, 01-A-1613
Plaintiff *pro se*
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ERIC T. SCHNEIDERMAN             ROGER W. KINSEY, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Gary Gillard alleges, *inter alia*, that correction officers directed Defendant Inmate Eric Perez to attack him.  Currently pending before the Court are Plaintiff's motion for summary judgment against Defendant Perez (Dkt. No. 95) and several other requests by Plaintiff (Dkt. Nos. 105,

107, and 120). For the reasons that follow, I recommend that Plaintiff's motion be denied and I deny Plaintiff's other requests.

**I.     BACKGROUND**

The complaint alleges that Plaintiff wrote to officials at Great Meadow Correctional Facility in late 2008 to advise them that there was a conspiracy between Defendant Correction Officer Michael Rovelli and other correction officers to arrange a vigilante gang assault on, or murder of, Plaintiff. (Dkt. No. 1 ¶ 36.)

On January 6, 2009, Plaintiff wrote a letter to the Inspector General's office describing Defendant Rovelli's continued threats and harassment and expressing fear about what would happen to him when he was released from keeplock. *Id*. ¶ 41.

Plaintiff alleges that on February 5, 2009, Defendant Rovelli told him that "it's not over yet mother fucker, go tell you rat bitch mother fucker remember it[']s not over." *Id*. ¶ 43. Later that day, Defendant Rovelli shouted at Plaintiff "go rat[,] Gary you fuck[i]n' rat." *Id*. ¶ 44.

Plaintiff alleges that on February 11, 2009, Defendant Rovelli came to his cell and said "I have the power not you . . . It's not over yet . . . you piece of shit." *Id*. ¶ 45. Thereafter, Defendant Rovelli had Defendant Correction Officer M. Rock assist him in denying food to Plaintiff in order to "keep him weak so he could not defend himself against the setup contract [h]it." *Id*. ¶ 46.

On April 25, 2009, Plaintiff went to the big recreation yard for the first time in about two months. *Id*. ¶ 47. He alleges that two inmates informed him that Defendant M. Rock had told Defendant Rovelli that Plaintiff was in the yard and that "today was a good day to get him." *Id*. As Plaintiff walked around the yard, he noticed Defendant Rovelli glaring at him. *Id*. ¶ 48.

Defendant Rovelli went to a table where Defendant Perez was sitting. *Id*. Shortly thereafter, Defendant Perez attacked Plaintiff without warning. *Id*. Plaintiff attempted to defend himself and hoped the officers would stop the attack. *Id*. ¶ 49. Instead, Defendant Rovelli forced his knee into Plaintiff's head and said "I told you I would get you[.] You just got beat by a fagg[o]t[,] you can't fight." *Id*. Plaintiff alleges that correction officers then took him inside and subjected him to excessive force. *Id*. ¶¶ 50- 59.

Plaintiff has submitted a memorandum completed by Defendant Nicholas Deluca after the incident. (Dkt. No. 95-4 at 1.) It states that when Defendant Deluca "questioned inmate Gillard about the incidents, he was uncooperative and refused to answer an[y] questions. Sgt. Hoy interviewed inmate Perez about the fight, he stated that Gillard had been 'running his mouth' and continued to 'run his mouth' and they met in the yard today. He also added that Gillard threw the first punch." *Id*.

In contrast to Plaintiff's version of events, Defendant Perez states that:

> there was absolut[e]ly no 'hit' placed by anyone that contributed to the altercation between me and the plaintiff . . . I approached [Plaintiff] and engaged in a fight with him. As we were fighting the officers then approached yelling "break it up" [and] "get on the ground." As I tried to do such, [Plaintiff] was on the ground holding onto my waist as I was standing and proceeded to try to hit me. He would not let go so the officers had to pull him off of me. How would that constitute that officers pa[i]d me to put a "hit" on him? . . . [T]he reason this fight happened is because when I was playing handball I accident[al]ly bumped into [Plaintiff], words were exchanged [and] he proceeded to spit in my face. I later retaliated later that rec period.

(Dkt. No. 109.) Previously Defendant Perez has stated that:

> [T]here was no "hit" placed by anyone that contributed to the altercation between me and the [P]la[i]ntiff . . . There are also no

3

> facts supporting the pla[i]ntiff's claim that I . . . was hired to attack the pla[i]ntiff. The Pla[i]ntiff states that he never spit in my face. From my recollection, I was playing hand ball that morning and at a time I was going for the ball I accident[a]l[l]y bumped into the pla[i]ntiff, words were exchanged and the pla[i]ntiff proceeded to spit in my face and walked away. I then proceeded to follow the pla[i]ntiff, then turned the other way and proceeded to walk the other direction. Few moments later seen the pla[i]ntiff in front of me and the altercation began therefor[e] the altercation was due to the fact that the pla[i]ntiff spit in my face . . . In conclusion, this was nothing more than a fight, not the <u>ridiculous</u> claim that I was hired by correctional officers to do a "hit" on him.

(Dkt. No. 80 at 1-2.)

Plaintiff has submitted a video of the recreation yard incident. Plaintiff asserts that the video:

> clearly shows Defendant . . . Perez . . . walking from the left side of the screen on picture frame #1 into the area of which the Plaintiff was walking with [an inmate named] Mr. Leo and another prisoner, . . . you will see the plaintiff on his knees of which he could not move as Perez was standing on the Plaintiff's coat and Perez was holding the coat collar with his left hand and punching the Plaintiff with [h]is right hand, the Court will see that Perez story is a complete lie as well as the report of Defendants claiming the Plaintiff was quote running his mouth.

(Dkt. No. 95-2 at 3.)

The undersigned has watched the video provided by Plaintiff. The footage of the fight is in Chapter 5 of the DVD and begins at the 45:44 mark. At the 47:30 mark, the fight is visible in the upper right hand quadrant of the "CAM1" frame. However, the footage is extremely unclear. It is impossible to determine from the footage who the fighters are, what may have been said, or even who threw the first punch. The video is simply not clear enough to make any ruling as a matter of law regarding precisely what transpired.

Plaintiff alleges that in order to cover up the use of excessive force, Defendant Lieutenant K.H. Smith, Defendant Lieutenant Peter Besson, and Defendants Kelly, Foster, Flores, Shattuck, Rovelli, Hoy, and Deluca filed false misbehavior reports charging Plaintiff with fighting, violent conduct, refusing a direct order, and assault on staff. *Id*. ¶ 67.

At the disciplinary hearing regarding the misbehavior reports, Plaintiff presented testimony from Mr. Leo, who, as noted above, was walking with Plaintiff in the recreation yard when the fight started. (Dkt. No. 95-2 at 2-3; Dkt. No. 95-4 at 7.[1]) Mr. Leo testified that he had been walking with Plaintiff on the day of the attack. *Id*. Mr. Leo testified that he did not see Plaintiff approach, swing at, or strike any other individual. *Id*. Mr. Leo testified that he saw an individual walk "off the tables and approach [Plaintiff] and swing at [Plaintiff]." *Id*.

Plaintiff asserts that he was found guilty of all the charges in the misbehavior reports and sentenced to the Special Housing Unit for sixteen months. (Dkt. No. 95-2 at 1.) He asserts that, in contrast, Defendant Perez was sentenced only to thirty days of keeplock in his cell "as a reward for helping correctional staff with this sanctioned contract hit against the Plaintiff." *Id*.

On August 9, 2010, Plaintiff moved for summary judgment of his claims against Defendant Perez. (Dkt. No. 77.) Defendant Perez responded to the motion. (Dkt. No. 80.) The Court denied Plaintiff's motion for summary judgment of the claims against Defendant Perez because it was not accompanied by a notice of motion, a statement of material facts, or a memorandum of law, and because Plaintiff did not serve the supporting exhibits on Defendant Perez. (Dkt. No. 82 at 31; Dkt. No. 84 at 3.)

---

[1] Citations to page numbers refer to the page numbers assigned by the Court's electronic filing system.

Plaintiff now moves again for summary judgment of his claims against Defendant Perez. (Dkt. No. 95.) Defendant Perez has filed a notarized opposition. (Dkt. No. 109.)

## II.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

---

[2]  A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

**B.     Analysis**

Broadly construed, the complaint sets out the following claims against Defendant Perez: (1) conspiracy; (2) violations of Plaintiff's Eighth Amendment rights; (3) a state law tort claim for assault; and (4) a state law tort claim for battery. (Dkt. No. 1.) Plaintiff's motion for summary judgment does not address each claim individually, but rather argues broadly that Plaintiff is entitled to summary judgment. (Dkt. No. 95.) The Court will address each claim individually.

    1.     <u>Conspiracy</u>

Plaintiff alleges that Defendant Perez conspired with DOCCS officials to attack Plaintiff. (Dkt. No. 1.) "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).

Here, the record does not show that Plaintiff is entitled to judgment as a matter of law because it does not establish an agreement between Defendant Perez and the correctional officers. Rather, it shows that Plaintiff contends that an agreement existed and that Defendant Perez contends that it did not. Therefore, it is recommended that Plaintiff's motion for summary judgment of this claim be denied. The Court notes that the denial of Plaintiff's motion for summary judgment would not mean that Plaintiff's conspiracy claim against Defendant Perez would be dismissed. Rather, the litigation regarding that claim would proceed through discovery, dispositive motions, and possibly trial.

2.      Eighth Amendment

Plaintiff alleges that Defendant Perez violated his Eighth Amendment rights. (Dkt. No. 1 at 31.) 42 U.S.C. § 1983 permits a person to recover damages from another who has deprived him of his constitutional rights "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory." Private actors can be liable under § 1983 pursuant to the "joint action" doctrine, under which "a private actor can be found to act under color of state law for § 1983 purposes if the private party is a willful participant in a joint action with the State or its agents." *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (citation and punctuation omitted).

As discussed above regarding the conspiracy claim, the record does not establish as a matter of law that Defendant Perez was a willful participant in a joint action with correctional officers. Therefore, it is recommended that Plaintiff's motion for summary judgment of this claim be denied.

3.      Assault

Plaintiff claims that Defendant Perez assaulted him within the meaning of New York state tort law. (Dkt. No. 1 at 31.) Under New York law, "[t]o sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact." *Fugazy v. Corbetta*, 825 N.Y.S. 2d 120, 122 (2d Dept. 2006). The evidence before the Court does not establish as a matter of law that Defendant Perez assaulted Plaintiff. It is not clear from the record currently before the Court who threw the first punch during the fight between Plaintiff and Defendant Perez or whether Defendant Perez engaged in any physical conduct placing Plaintiff in imminent apprehension of harmful contact

before the fight began. Therefore, it is recommended that Plaintiff's motion for summary judgment of this claim be denied.

    4.    Battery

Plaintiff claims that Defendant Perez battered him within the meaning of New York state tort law. (Dkt. No. 1 at 31.) Under New York law, "[a] plaintiff, to recover damages for battery, must prove that there was bodily contact, that the contact was offensive, that is 'wrongful under all the circumstances,' and that defendant intended to make the contact." *Goff v. Clarke*, 755 N.Y.S.2d 493, 495 (3d Dept. 2003) (citations omitted). Defendant Perez has admitted that he engaged in a fight with Plaintiff. However, the evidence before the Court is insufficient to conclude, as a matter of law, that Defendant Perez is not entitled to the defenses of provocation or self-defense. Therefore, it is recommended that Plaintiff's motion for summary judgment of this claim be denied.

## III.    PLAINTIFF'S OTHER REQUESTS

In documents filed in support of his motion for summary judgment, Plaintiff requests (1) that the undersigned recuse himself from the case due to bias; (2) the appointment of counsel; and (3) that Defendant Perez be found in violation of court orders. (Dkt. No. 105 at 3-4; Dkt. No. 107 at 4; Dkt. No. 120.)

### A.    Recusal

Regarding recusal, Plaintiff states that he believes that "there is judicial misconduct within the handling of this case by the clerks of the court [and] the judge." Plaintiff is "sure the court has taken offense to the claims stated by this plaintiff and more than likely will cause the dismissal of this claim under some justified law or procedure which this layman has no

knowledge . . . ." (Dkt. No. 105 at 3-4.)  Plaintiff claims that the Court "is helping the defendants" and "acting as co-counsel to aid the defendants to ensure they are protected at all times against any claims made by this prisoner and plaintiff." *Id*.  Plaintiff's contentions are without merit and his request for recusal is denied.

    **B.**    **Counsel**

Plaintiff requests that counsel be appointed for him.  (Dkt. No. 105 at 4.)  Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the court in ruling upon such a motion.  As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance.  If so, the court should then consider:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.[3]  Rather, each case must be decided on its own

---

[3] For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation.  *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989).

facts. *Velasquez v. O'Keefe*, 899 F.Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

A review of the file in this matter reveals that the issues in dispute herein are not overly complex. Further, it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action. While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F.Supp. at 974. Finally, this Court is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. In any event, it is highly probable that this Court will appoint trial counsel at the final pretrial conference (should this case survive any further dispositive motions). The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted. Plaintiff may only file another motion for appointment of counsel in the event he can demonstrate that, in light of specific changed circumstances, consideration of the above factors warrants the granting of such an application.

    **C.**    **Defendant Perez's Compliance with Court Orders**

Plaintiff requests that Defendant Perez be "deemed in violation of court order by refusing to forward the plaintiff copies of all pleadings and responses he has filed" and that the "clerk and judge of this case . . . follow all rules and stop deliberate interference by giving unrequested extensions." (Dkt. No. 107 at 4.)

Plaintiff correctly notes that Defendant Perez did not serve his opposition to the motion for summary judgment (Dkt. No. 109) on Plaintiff. Defendant Perez is cautioned that any

documents he files in this action must be served on Plaintiff.  If Defendant Perez does not serve future documents on Plaintiff, Plaintiff may file a motion for sanctions.  However, because of the special solicitude that the Court must extend to *pro se* litigants such as Plaintiff and Defendant Perez, a formal finding that Defendant Perez is in violation of court orders is not appropriate at this time.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 95) be **DENIED**; and it is further

**ORDERED** that Plaintiff's other requests (Dkt. Nos. 105, 107, and 120) are **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: February 8, 2012
       Syracuse, New York

                                      George H. Lowe
                                      United States Magistrate Judge