UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY GILLARD,

          Plaintiff,
                      9:09-CV-0860
v.                     (NAM/TWD)

MICHAEL ROVELLI, et al.,

          Defendants.
_____

APPEARANCES:                OF COUNSEL:

GARY GILLARD, 01-A-1613
Plaintiff *pro se*
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN        ROGER W. KINSEY, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

   This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Gary Gillard alleges that correction officers directed Defendant Inmate Eric Perez to attack him, that the correction officers then attacked him themselves, and that Defendant Nurse Joy Leos was deliberately indifferent to the injuries he sustained in the attacks and helped to cover up the

correction officers' attack.  Currently pending before the Court are Plaintiff's third motion for summary judgment against Defendant Perez (Dkt. Nos. 137-38) and Defendant Leos' motion for summary judgment of the claims against her.  For the reasons that follow, I recommend that the Court deny Plaintiff's motion, deem Defendant Leos' motion to be a partial motion for summary judgment, grant Defendant Leos' motion, *sua sponte* dismiss Plaintiff's belatedly-asserted failure-to-protect claim, and allow Plaintiff's claim against Defendant Leos regarding the alleged falsification of medical records to proceed to trial.

I.  **BACKGROUND**

The complaint alleges that Plaintiff wrote to officials at Great Meadow Correctional Facility in late 2008 to advise them that there was a conspiracy between Defendant Correction Officer Michael Rovelli and other correction officers to arrange a vigilante gang assault on, or murder of, Plaintiff.  (Dkt. No. 1 ¶ 36.)

On January 6, 2009, Plaintiff wrote a letter to the Inspector General's office describing Defendant Rovelli's continued threats and harassment and expressing fear about what would happen to him when he was released from keeplock.  *Id*. ¶ 41.

Plaintiff alleges that on February 5, 2009, Defendant Rovelli told him that "it's not over yet mother fucker, go tell you rat bitch mother fucker remember it[']s not over." *Id*. ¶ 43.  Later that day, Defendant Rovelli shouted at Plaintiff "go rat[,] Gary you fuck[i]n' rat." *Id*. ¶ 44.

Plaintiff alleges that on February 11, 2009, Defendant Rovelli came to his cell and said "I have the power not you . . . It's not over yet . . . you piece of shit." *Id*. ¶ 45.  Thereafter, Defendant Rovelli had Defendant Correction Officer M. Rock assist him in denying food to Plaintiff in order to "keep him weak so he could not defend himself against the setup contract

[h]it." *Id*. ¶ 46.

On April 25, 2009, Plaintiff went to the big recreation yard for the first time in about two months. *Id*. ¶ 47. He alleges that two inmates informed him that Defendant M. Rock had told Defendant Rovelli that Plaintiff was in the yard and that "today was a good day to get him." *Id*. As Plaintiff walked around the yard, he noticed Defendant Rovelli glaring at him. *Id*. ¶ 48. Defendant Rovelli went to a table where Defendant Perez was sitting. *Id*. Shortly thereafter, Defendant Perez attacked Plaintiff without warning. *Id*. Plaintiff attempted to defend himself and hoped the officers would stop the attack. *Id*. ¶ 49. Instead, Defendant Rovelli forced his knee into Plaintiff's head and said "I told you I would get you[.] You just got beat by a fagg[o]t[,] you can't fight." *Id*. Defendant Rovelli then instructed Defendant Corrections Officer Frank Flores to take Plaintiff "into beat up Room #1[,] I'll be right there." *Id*. ¶ 50.

Once in the room, Plaintiff was placed with his toes and face to the wall. *Id*. ¶ 51. Defendant Sergeant Nicholas Deluca entered the room and said "Perez should have put [six] inches of ste[e]l into you, you piece of shit, but we will finish what he started." *Id*. ¶ 52. Then Defendant Rovelli came in, said "you can't fight, you got beat by a fagg[o]t," and slammed Plaintiff's face into the wall twice. *Id*. ¶ 53. Plaintiff's "lights went out" and he "could not see for a few seconds but heard [Defendant] Rovelli state his face was bleeding as well as the plaintiff[']s." *Id*. Plaintiff was then "beaten to the flo[or]" by Defendants Deluca and Flores and Defendant Correction Officer Shattuck as blood ran nonstop from two cuts around Plaintiff's right eye. *Id*. ¶ 54. Plaintiff tried to "cover up into the wall to stop the blows from reaching [his] face," but Defendant Rovelli grabbed the hood of Plaintiff's sweat suit and exposed his face so that Defendant Rovelli and Defendants Deluca, Flores, and Shattuck could hit it. *Id*. ¶ 55. This

3

continued for fifteen or twenty minutes. *Id*. Plaintiff's hands were cuffed behind his back the entire time. *Id*. Defendant Sergeant Colin Fraser, Defendant Sergeant Michael Hoy, and Defendant Correction Officer H. Foster joined in by kicking Plaintiff in the back, head, buttocks, legs, spine, and shoulders. *Id*. ¶ 56.

Defendants Deluca and Shattuck forced Plaintiff onto his feet "due to the large amount of blood all over the floor and [P]laintiff's clothing" and took him to a different room. *Id*. ¶ 57. There, Defendant Shattuck pinned Plaintiff against a sink and punched Plaintiff in the ribs and back while Defendant Deluca hit Plaintiff in the face, eyes, nose, and jaw. *Id*.

Once the blood was cleaned up in the first room, Defendants Deluca and Shattuck returned Plaintiff there and punched him in the face, knocking him to the floor. *Id*. ¶ 58. Defendants Deluca and Shattuck continued to kick and stomp Plaintiff's legs, ankles, ribs, and chest. *Id*. As this was happening, Defendant Fisher Nesmith opened the door and said "[A]re you done yet[?] If not, take your time." *Id.* ¶ 59. Defendant Nesmith then slammed the steel door into Plaintiff's head as he lay "on the floor bloody and broken up." *Id*.

Plaintiff alleges that he was taken to an examination room after the beating was over. There, Defendant J. Leos "did a vis[ua]l inspection" of Plaintiff and documented some of Plaintiff's injuries. *Id*. ¶ 60. Plaintiff alleges that these injuries included broken ribs, broken left hand, and broken eardrum. *Id*. ¶ 62. Defendant Leos did not say anything or ask any questions. *Id*. ¶ 60. She did not give Plaintiff any medical assistance other than to wash the blood off of Plaintiff's face and head. *Id*. Defendant Leos entered a false time on her report to "cover up for beating." *Id*. Defendant Nesmith then attempted to stitch the cuts around Plaintiff's eye, but Plaintiff refused treatment because Defendant Nesmith had participated in the use of excessive

4

force. *Id*. ¶ 61.

Plaintiff alleges that in order to cover up the use of excessive force, Defendant Lieutenant K.H. Smith, Defendant Lieutenant Peter Besson, and Defendants Kelly, Foster, Flores, Shattuck, Rovelli, Hoy, and Deluca filed false misbehavior reports charging Plaintiff with fighting, violent conduct, refusing a direct order, and assault on staff. *Id*. ¶ 67.

Plaintiff asserts that he was found guilty of all the charges in the misbehavior reports and sentenced to the Special Housing Unit for sixteen months. (Dkt. No. 95-2 at 1.) He asserts that, in contrast, Defendant Perez was sentenced only to thirty days of keeplock in his cell "as a reward for helping correctional staff with this sanctioned contract hit against the Plaintiff." *Id*.

On August 9, 2010, Plaintiff moved for summary judgment of his claims against Defendant Perez. (Dkt. No. 77.) Defendant Perez opposed the motion. (Dkt. No. 80.) The Court denied Plaintiff's motion for summary judgment of the claims against Defendant Perez because it was not accompanied by a notice of motion, a statement of material facts, or a memorandum of law, and because Plaintiff did not serve the supporting exhibits on Defendant Perez. (Dkt. No. 82 at 31; Dkt. No. 84 at 3.)

On June 3, 2011, Plaintiff again moved for summary judgment of his claims against Defendant Perez. (Dkt. No. 95.) Defendant Perez opposed the motion. (Dkt. No. 109.) Magistrate Judge George H. Lowe recommended that the Court deny the motion, finding that Plaintiff had not established that he was entitled to judgment as a matter of law. (Dkt. No. 122 at 7.) The Court adopted Judge Lowe's recommendation on March 20, 2012. (Dkt. No. 126.)

Judge Lowe retired on February 9, 2012. This case was reassigned to me the next day. (Dkt. No. 123.)

Plaintiff now brings a third motion for summary judgment of his claims against Defendant Perez. (Dkt. Nos. 137.) Defendant Perez has not opposed the motion.

Defendant Leos moves for summary judgment of the claims against her. (Dkt. No. 140.) Plaintiff has opposed the motion. (Dkt. No. 154.)

## II.  APPLICABLE LEGAL STANDARDS

### A.  Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball*

---

[1] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

*Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . [W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's motion for summary judgment of his claims against Defendant Perez essentially reiterates the arguments he made in his previous motion for summary judgment. Indeed, Plaintiff acknowledges this fact by stating in his notice of motion that he moving pursuant to Rule 56, which governs motions for summary judgment, and Rule 60(b), which governs some types of motions for reconsideration. (Dkt. No. 137-1 at 1.) Plaintiff asserts that reconsideration is appropriate "based on the newly discovered evidence that was reviewed by Judge George Lowe and whom in retaliation to motion of recusal deny this motion after seeing and knowing that evid[e]nce was reviewed in camera which proved that Defendant Perez was lying and made numerous false statements." *Id*.

"When arguing for reconsideration based on new evidence, the moving party must demonstrate that the newly discovered evidence was neither in his possession nor available upon

8

the exercise of reasonable diligence at the time the interlocutory decision was rendered. Furthermore, the movant must show that manifest injustice will result if the court opts not to reconsider its earlier decision." *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers of New Jersey*, ___ F. Supp. 2d ___, No. 08-CV-7069, 2012 U.S. Dist. LEXIS 131588, at *133, 2012 WL 4049958, at *34 (S.D.N.Y. Sept. 11, 2012) (punctuation and citations omitted).

Plaintiff asserts that he has new evidence that Defendant Perez is lying. (Dkt. No. 137-1 at 1.) In support of that assertion, Plaintiff notes that Defendant Perez stated in his answer to the complaint that he began fighting Plaintiff because Plaintiff spit in his face. (Dkt. No. 138 at 2.) Plaintiff contrasts this with Defendant Perez's pre-litigation statements, in which he indicated that he began fighting Plaintiff because Plaintiff was "running his mouth." *Id*. This evidence, however, is not new. Plaintiff made these precise assertions in his previous motion for summary judgment. (Dkt. No. 95-2 at 2.) Therefore, Plaintiff is not entitled to reconsideration of the Court's previous rulings.

Even if Plaintiff were entitled to reconsideration, the Court's previous rulings were correct. Plaintiff's argument hinges on his characterization of Defendant Perez as a liar. Plaintiff's characterization may well be correct. But "[c]redibility determinations . . . are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). *See also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Thus, Plaintiff's evidence merely raises an issue for the jury to consider. It does not entitle Plaintiff to summary judgment of his claims against Defendant Perez. As Judge Lowe noted in his Report-Recommendation, "the denial of Plaintiff's motion for summary

judgment would not mean that Plaintiff's . . . claim[s] against Defendant Perez would be dismissed. Rather, the litigation regarding [those] claim[s] would proceed through discovery, dispositive motions, and possibly trial." (Dkt. No. 122 at 7.)

Plaintiff argues, in addition, that he is entitled to summary judgment because Defendant Perez failed to respond to Plaintiff's current motion. (Dkt. No. 132-1 at 4.) When a party fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, the Court must (1) determine what material facts, if any, are undisputed in the record; and (2) assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the moving party. *See Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); L.R. 7.1(b)(3). Here, the facts surrounding the fight between Defendant Perez and Plaintiff are disputed in the record. Thus, Plaintiff is not entitled to summary judgment despite Defendant Perez's failure to respond to the motion. Therefore, I recommend that the Court deny Plaintiff's motion for summary judgment.

## IV. DEFENDANT LEOS' MOTION FOR SUMMARY JUDGMENT

Defendant Leos moves for summary judgment. (Dkt. No. 140.) Although Defendant Leos states that she is moving for an order dismissing the complaint against her "in its entirety," Defendant Leos has not addressed all of the claims against her. (Dkt. No. 140-2 at 7.) Therefore, I recommend that the Court treat the motion as a partial motion for summary judgment. For the reasons discussed below, I recommend that the Court grant Defendant Leos' partial motion. However, because Defendant Leos did not address Plaintiff's claim that she falsified medical

records in order to cover up the alleged use of excessive force, I recommend that that claim proceed to trial.

### A. Official Capacity Claim

The complaint names Defendant Leos in both her individual and official capacities. (Dkt. No. 1 at 2.) Defendant Leos moves for summary judgment dismissing the official capacity claim against her, arguing that it is barred by the Eleventh Amendment. (Dkt. No. 140-2 at 2-3.[2]) Defendant is correct.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-06 (1984).

The Eleventh Amendment bars suits for damages against state officials acting in their

---

[2] Page numbers in citations to Defendant Leos' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

official capacities.³ All DOCCS employees are state officials for the purposes of the Eleventh Amendment. *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000)("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."). Here, Defendant Leos was a DOCCS employee at the time of the incident involved in this lawsuit. (Dkt. No. 141 ¶ 1.) Therefore, I recommend that the Court grant Defendant Leos' motion for summary judgment dismissing the claims against her in her official capacity.

### B. Eighth Amendment Medical Claim

Defendant Leos moves for summary judgment dismissing Plaintiff's Eighth Amendment medical care claim against her. (Dkt. No. 140-2 at 3-5.) Defendant Leos argues that the

---

³ *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky*, No. 9:05-CV-0501 (GLS/RFT), 2007 U.S. Dist. LEXIS 8530, at *2, 2007 WL 433375, at *4 (N.D.N.Y. Feb. 6, 2007) (Sharpe, J.) (citing cases).

undisputed evidence establishes that she did not act with deliberate indifference. *Id*.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id*. (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his or her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Here, Defendant Leos concedes, for the purpose of this motion only, that Plaintiff suffered from a serious medical condition. (Dkt. No. 140-2 at 4.) Defendant Leos argues, however, that there is no evidence that she acted with deliberate indifference to Plaintiff's serious medical needs. *Id*. Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-03. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is

not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.")

The evidence shows that Defendant Leos was not deliberately indifferent to Plaintiff's serious medical needs. Defendant Leos declares that she examined Plaintiff at the infirmary "following a fight." (Dkt. No. 141 ¶ 4.) She noted several injuries in her report: (1) a 3/4 inch laceration to Plaintiff's right eyebrow; (2) a half-dollar-sized bump on Plaintiff's right cheekbone; (3) abrasions to Plaintiff's left cheek; (4) an abrasion to the middle of Plaintiff's back and right scapula area; (5) an abrasion to Plaintiff's right index finger; and (6) an abrasion to Plaintiff's left knee. *Id*. ¶ 5. She declares that she cleaned the lacerations on Plaintiff's head with normal saline solution. *Id*. ¶ 6. She then retrieved the physician on duty to suture the laceration above Plaintiff's right eyebrow. *Id*. ¶ 7. Defendant Leos declares that Plaintiff refused the suturing. *Id*. ¶ 8.

Plaintiff contends that his "visible injuries warranted ex-rays" of his "head and for broken ribs, broken ear drum and fractured hand." (Dkt. No. 154 at 4.) If there was any evidence before the Court that Plaintiff had broken ribs, a broken ear drum, or a fractured hand, I would find that Plaintiff had raised a triable issue of fact that Defendant Leos acted with deliberate indifference. However, there is no such evidence.

Plaintiff's declaration in opposition to Defendant Leos' motion for summary judgment does not contain any information about his injuries. *Id*. at 1-3. It is only in his unsworn Statement of Disputed Factual Issues that Plaintiff refers to broken ribs, a broken ear drum, and a fractured hand. *Id*. at 4. Plaintiff's reference in his "verified" complaint is not evidence because

15

the complaint was not signed under penalty of perjury.[4] (Dkt. No. 1 at 17, 33.) Plaintiff "verified" the complaint by stating that "I have read the above complaint and it is correct to the best of my knowledge." *Id*. Under 28 U.S.C. § 1746, a declaration made "in substantially the following form: . . . 'I declare . . . under penalty of perjury that the foregoing is true and correct'" qualifies as a sworn affidavit or declaration. This "form is flexible but always requires the declaration to be made under 'penalty of perjury.'" *Alston v. Butkiewicus*, No. 3:09-CV-00207, 2010 U.S. Dist. LEXIS 44935, at *3 n.1, 2010 WL 1839939, at *1 n.1 (D. Conn. May 7, 2010). *See also Ed-George v. Burns*, No. 1:09-CV-0869 (GTS/DRH), 2009 U.S. Dist. LEXIS 81712, at *7, 2009 WL 2957796, at *2 (N.D.N.Y. Sept. 8, 2009).[5] Here, Plaintiff's complaint was not signed under penalty of perjury. Therefore, it cannot be treated as a sworn affidavit or declaration for the purposes of opposing Defendant Leos' motion for summary judgment. *Cf. Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865 872 (2d Cir. 1995) ("A verified complaint is to be treated

---

[4] The complaint's allegations were sufficient to defeat Defendant Leos' motion to dismiss because of the different legal standard applicable to such motions. (Dkt. No. 82 at 18) ("Accepting Plaintiff's allegations that his ribs, hand, and eardrum were broken as a result of the alleged excessive force incident as true, *as I must for the purposes of this motion*, the complaint plausibly suggests that Defendant Leos was aware of facts from which he could have drawn the inference that Plaintiff had a serious medical need, actually drew that inference, and ignored that medical need.") (emphasis added).

[5] The Court will provide Plaintiff with a copy of these unpublished decisions in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

16

as an affidavit for summary judgment purposes.") (citations omitted). Accordingly, Plaintiff has not raised a triable issue of fact and I recommend that the Court grant Defendant Leos' motion for summary judgment dismissing the Eighth Amendment medical claim against her.

C. **Failure to Protect Claim**

Plaintiff declares in opposition to the motion for summary judgment that "Defendant Leos was in the room and stood by as Defendant Michael Rovelli began his assault on the plaintiff then she walked out of the room as the beating turned bloody . . ." (Dkt. No. 154 at 2.) Plaintiff did not assert this failure-to-protect claim in his complaint. Plaintiff asserted in the complaint that he "began to yell seeking some help or intervention by . . . medical person[ne]l but no one responded as Deluca continued to stomp the ribs and chest area of the plaintiff kicking the wind out of plaintiff[']s lung[ ]s." (Dkt. No. 1 ¶ 58.) This allegation neither identifies Defendant Leos nor states that she was "in the room" when the alleged attack began. Plaintiff also alleged that he told Nurse Janet Collins that he was "beaten by staff in exam room #1 . . . while medical staff stood by and did nothing." (Dkt. No. 1 ¶ 70.) Again, this allegation does not identify Defendant Leos. Finally, Plaintiff alleged that Defendant Jane Doe "was at the hospital the day of the incident and failed to stop . . . the beating." (Dkt. No. 1 ¶ 81.) This allegation does not implicate Defendant Leos because she was identified by name in the complaint and has never been a Doe Defendant. Plaintiff does not appear to have asserted that Defendant Leos was actually present during the alleged attack by the Defendant correction officers at any previous point of the more than three-year history of this litigation. Allowing Plaintiff to add a failure to protect claim against Defendant Leos at this late date would be unduly prejudicial to Defendants. *See McChesney v. Bastien*, No. 9:10-CV-1409 (GTS/DEP), 2012 U.S. Dist. LEXIS 134739, at

17

*23, 2012 WL 4338707, at *5 (N.D.N.Y. Sept. 20, 2012) (collecting cases).[6]  Therefore, I recommend that the Court dismiss this claim.

### D. Claim That Defendant Leos Falsified Medical Records

Plaintiff declares in opposition to the motion for summary judgment that "Defendant Leos did document false information into the medical records of the plaintiff as the plaintiff did not have injuries to his face and body before he reached the Exam Room #1 [ ] where the beating took place." (Dkt. No. 154 ¶ 7.)  Plaintiff asserted this claim in his complaint. (Dkt. No. 1 ¶ 60.)  Defendants have not addressed this claim.  Therefore, I recommend that this claim proceed to trial.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for summary judgment (Dkt. No. 137) be **<u>DENIED</u>**; and it is further

**RECOMMENDED** that Defendant Leos' partial motion for summary judgment (Dkt. No. 140) be granted.  It is recommended that the Court dismiss the claims against Defendant Leos in her official capacity and the Eighth Amendment medical care claim against Defendant Leos; and it is further

**RECOMMENDED** that the Court dismiss Plaintiff's belatedly-asserted failure to protect claim against Defendant Leos; and it is further

**RECOMMENDED** that the claim that Defendant Leos falsified medical records to cover up the alleged use of excessive force proceed to trial; and it is further

**ORDERED** that the Clerk provide Plaintiff with copies of *Alston v. Butkiewicus*, No.

---

[6]  The Court will provide Plaintiff with a copy of this unpublished decision.

3:09-CV-00207, 2010 U.S. Dist. LEXIS 44935, 2010 WL 1839939 (D. Conn. May 7, 2010); *Ed-George v. Burns*, No. 1:09-CV-0869 (GTS/DRH), 2009 U.S. Dist. LEXIS 81712, 2009 WL 2957796 (N.D.N.Y. Sept. 8, 2009); and *McChesney v. Bastien*, No. 9:10-CV-1409 (GTS/DEP), 2012 U.S. Dist. LEXIS 134739, 2012 WL 4338707 (N.D.N.Y. Sept. 20, 2012).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: January 30, 2013
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge